**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **ISAAC HAMEL,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>**OILCREEK GENERAL PARTNER, LLC**, an Oklahoma company, and **OILCREEK OSWEGO PROGRAM, LP**, an Oklahoma company,<br><br>*Defendants.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Isaac Hamel ("Plaintiff Hamel" or "Hamel") brings this Class Action Complaint and Demand for Jury Trial against Defendant Oilcreek General Partner, LLC ("Defendant Oilcreek General Partner" or "Oilcreek General Partner") and Defendant Oilcreek Oswego Program, LP ("Defendant Oilcreek Oswego Program" or "Oilcreek Oswego Program") to stop the Defendants from violating the Telephone Consumer Protection Act ("TCPA") by placing unsolicited pre-recorded calls without consent. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendants' conduct. Plaintiff Hamel, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Hamel is a resident of Yukon, Oklahoma.

2. Defendant Oilcreek General Partner is an Oklahoma company headquartered in Dallas, Texas. Defendant Oilcreek General Partner conducts business throughout Oklahoma.

3. Defendant Oilcreek Oswego Program is an Oklahoma company headquartered in Dallas, Texas. Defendant Oilcreek General Partner conducts business throughout Oklahoma.

## JURISDICTION AND VENUE

4. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

5. This Court has personal jurisdiction over the Defendants and the venue is proper under 28 U.S.C. § 1391(b) because the Defendants do business in this District, and the calls at issue were directed to the Plaintiff who resides in this District.

## INTRODUCTION

6. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. According to online robocall tracking service "YouMail," 4.5 billion robocalls were placed in June 2025 alone, at a rate of 148.8 million per day. www.robocallindex.com (last visited July 27, 2025).

11. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

14. Defendant Oilcreek General Partner invests capital into oil and gas projects in Oklahoma.[3]

15. Defendant Oilcreek Oswego Program is the investment entity that drills multi-lateral horizontal wells in Oklahoma through which investors participate.[4]

16. Oilcreek General Partner generates investments for Oilcreek Oswego Program:

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://oilcreekoswego.com/team/
[4] Id.



[5]

17. In fact, the employees who work for Oilcreek General Partner are working directly on behalf of Oilcreek Oswego Program:



[6]

18. Oilcreek General Partner is the operating entity that manages Oilcreek Oswego Program.[7]

19. Oilcreek Oswego Program directly benefits and profits from investments that are generated by Oilcreek General Partner.

20. Oilcreek General Partner places calls to potential investors who will invest capital into Oilcreek Oswego Program.

---

5 https://oilcreekoswego.com/why-invest-in-oil-and-gas/
6 https://oilcreekoswego.com/team/
7 https://www.streetinsider.com/SEC%2BFilings/Form%2BD%2BOilcreek%2BOswego%2BProgram%2C/24942470.html

21. This includes the placement of pre-recorded calls to consumers who never provided consent to receive calls, as per Plaintiff's experience.

22. The Defendants set-up Oilcreek General Partner to shield Oilcreek Oswego Program from liability for the unsolicited telemarketing calls they place to generate business.

23. Because the prerecorded message identified the Oilcreek Oswego Program by name, Oilcreek Oswego is directly liable for the calls.

24. In response to these calls, Plaintiff Hamel brings this case seeking injunctive relief requiring the Defendants to cease from violating the TCPA, and an award of statutory damages to the members of the Class and costs.

**PLAINTIFF HAMEL'S ALLEGATIONS**

25. Plaintiff Hamel is the subscriber and the sole user of the cell phone number ending with 7175.

26. On July 18, 2025 at 6:00 PM, Plaintiff Hamel received an unsolicited call to his cell phone from 918-954-4929.

27. When Plaintiff Hamel answered this call, a pre-recorded message began to play discussing an investment opportunity for the Oilcreek Oswego Program.

28. After 22 seconds of listening to the message, Plaintiff Hamel disconnected the call.

29. Plaintiff believed the call was prerecorded because the caller immediately began speaking upon Plaintiff answering and was not attempting to interact with Plaintiff or allowing Plaintiff an opportunity to speak.

30. In addition, the recording was generic and sounded scripted.

31. When 918-954-4929 is dialed, an automated system identifies Oilcreek Oswego.[8]

[8] Based on an investigation conducted by Plaintiff's attorneys

32. Plaintiff Hamel has never provided his cell phone number to the Defendants in any context or consented to be called by them.

33. The unauthorized solicitation telephone call that Plaintiff received from or on behalf of the Defendants has harmed Plaintiff Hamel in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

34. Seeking redress for these injuries, Plaintiff Hamel, on behalf of himself and a Class of similarly situated individuals, brings suit under the TCPA.

**CLASS ALLEGATIONS**

35. Plaintiff Hamel brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) the Defendants called on their cellular telephone number (2) using an artificial or pre-recorded voice.

36. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendants have been fully and finally adjudicated and/or released. Plaintiff Hamel anticipates the need to amend the Class definition following appropriate discovery.

37. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

38. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) whether the Defendants placed pre-recorded voice message calls to Plaintiff and members of the Pre-recorded No Consent Class without first obtaining consent to make the calls;

(b) whether the calls constitute a violation of the TCPA;

(c) whether members of the Class are entitled to treble damages based on the wilfulness of Defendants' conduct.

39. **Adequate Representation**: Plaintiff Hamel will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Hamel has no interests antagonistic to those of the Class, and the Defendants have no defenses unique to Plaintiff. Plaintiff Hamel and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Hamel nor his counsel have any interest adverse to the Class.

40. **Appropriateness**: This class action is also appropriate for certification because the Defendants have acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Hamel. Additionally, the

damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Hamel and the Pre-recorded No Consent Class)**

41. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

42. The Defendants transmitted unwanted telephone calls to Plaintiff Hamel and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

43. These pre-recorded voice calls were made *en masse* without the prior express consent of the Plaintiff and the other members of the Pre-recorded No Consent Class.

44. The Defendants have, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendants' conduct, Plaintiff and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing his attorneys as Class Counsel;

b) An award of statutory damages and costs;

c) An order declaring that Defendants' actions, as set out above, violate the TCPA;

d) An injunction requiring the Defendants to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Hamel requests a jury trial.

**ISAAC HAMEL**, individually and on behalf of all others similarly situated,

DATED this 14th day of August, 2025.

By: /s/ *Stefan Coleman*
Stefan Coleman
law@stefancoleman.com
COLEMAN PLLC
18117 Biscayne Blvd, Suite 4152
Miami, FL 33160
(877) 333-9427

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*

* *Pro Hac Vice* Admission to be sought